DMP:MEL
F.#2017R01392

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH BKINGS7809@AOL.COM THAT IS STORED AT PREMISES CONTROLLED BY AOL | **APPLICATION FOR A SEARCH WARRANT FOR INFORMATION IN POSSESSION OF A PROVIDER (EMAIL ACCOUNT)** |

Case No. 18 M 0501

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, LAWRENCE SCHMUTZ, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by AOL, an email provider headquartered in New York. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require AOL to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-

authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Joint Terrorism Task Force ("JTTF"). I have been an agent for approximately nine years. As a Special Agent, I have investigated numerous matters during the course of which I have conducted physical and electronic surveillance, interviewed witnesses, executed court-authorized search warrants and used other investigative techniques to secure relevant information regarding a variety of crimes. I am familiar with the facts and circumstances set forth below from my personal review of records, documents and other physical evidence obtained during this investigation, and from communications and information provided to me by fellow agents and other government personnel with knowledge related to this investigation.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 842(a)(3)(A) (transportation of explosive materials) and 18 U.S.C. § 2332a(a)(2) (use of a weapon of mass destruction) have been committed by Victor Kingsley. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

2

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.     On or about July 28, 2017 at approximately 4:15 p.m., the owner of the residence at 145-23 222 Street Jamaica, New York (the "222 Street address") was outside the residence and opened a cylinder-shaped package inside of a plastic bag that he found by the mailbox of the residence.  Upon opening, the package exploded.  The destructive device (the "July 2017 device") was a switch-activated device, which is triggered when an unwitting person attempts to open the package.  The explosion resulted in extensive burns to the owner, who was then taken to the hospital.  On August 1, 2017, the owner died as a result of his injuries.

7.     After the explosion, agents recovered the remains of the package.  The address label was still visible.  The package was addressed to an individual, who at the time was a New York City Police Department ("NYPD") officer (hereinafter referred to as "Police Officer 1") at "14523 222nd St Jamaica, NY Springfield Gardens, NY."  The sender was listed as an individual, who is a retired NYPD Sergeant (hereinafter referred to as "Sergeant") at "2820 Snyder Ave, Brooklyn, NY 11226".  The return address listed is the address for the NYPD 67 Precinct in Brooklyn, New York.  Police Officer 1 worked at the 67 Precinct from approximately 2014 to 2016.  Sergeant was previously assigned to the 67

3

Precinct from approximately 2003 to 2015. Sergeant retired in 2015 and was out of the country at the time of the explosion.

8.     At the time of the explosion, Police Officer 1 did not live at the 222 Street address. NYPD officers interviewed Police Officer 1, who stated that he has never lived at the 222 Street address, and he does not know anyone who lives at the 222 Street address. Even though Police Officer 1 has never lived at the 222 Street address, there are multiple websites that link Police Officer 1 to the 222 Street address. Whitepages.com provides multiple addresses for Police Officer 1's name in New York. One of the provided addresses is the address 145-23 222nd Street, Springfield Gardens, NY 11413. A review of whitepages.com on February 16, 2018 shows that it listed two entries for Police Officer 1's name residing in New York, one of which was the 222 Street address.

9.     Records obtained from whitepages.com showed fourteen searches for Police Officer 1's name between December 1, 2016 and July 31, 2017. Of those fourteen searches, nine of the searches occurred on or about December 8, 2016 and December 9, 2016. There were three Internet Protocol ("IP") addresses associated with these searches: 98.116.26.208, 98.116.21.86 and 98.116.26.48 (collectively, the "98 IP addresses"). Less than fifteen minutes after the final December 9, 2016 whitepages.com search from IP address 98.116.26.48 IP, the user of the same IP address logged into the Facebook page for "Vei King." The vanity name for the Facebook account is "The God Named King," and the registered email address for the account is "thegodnamedking@yahoo.com." Records obtained from yahoo show that this email account is registered to Victor Kingsley at zip code 11203.

4

10.     Records from Verizon obtained in response to a subpoena show that at the time of the above searches, the 98 IP addresses were associated with the customer "Besorene Kingsley" located at 152 E 43rd Street, Brooklyn, New York 11203 (the "43rd Street address"). Records obtained from New York State show that Besorene Kingsley is the mother of Victor C. Kingsley. Records obtained from the New York Department of Motor Vehicles show that both Victor Kingsley and Besorene Kingsley reside at the 43rd Street address. In addition, postal money orders obtained from the Federal Reserve Bank dated August 17, 2017, December 20, 2017 and January 18, 2018, provide the 43rd Street address as Victor Kingsley's address. The 43rd Street address is within the confines of NYPD's 67 Precinct.

11.     A review of NYPD records revealed that on January 5, 2014, Victor Kingsley was arrested in the vicinity of Linden Boulevard and East 43rd Street in Brooklyn, New York, which is the intersection located approximately 400 feet north of the 43rd Street address. Victor Kingsley was arrested for criminal possession of a weapon, obstruction of governmental administration, disorderly conduct and resisting arrest. The arrest records indicate that the arresting officer was an officer assigned to the 67 precinct (hereinafter referred to as "Police Officer 2"), and the supervising officer for the arrest was Sergeant, the same individual listed as the sender of the July 2017 device. In addition to Police Officer 2, three other police officers from the 67 Precinct were involved in the arrest of Kingsley and were present at the scene of his arrest. Ultimately, all charges against Kingsley were dismissed.

12.     As set forth above, Sergeant was assigned to the 67 Precinct from September 4, 2003 until his retirement, on or about July 21, 2015. Police Officer 1 was a police officer assigned to the 67 Precinct from May 16, 2014 to December 7, 2016. Prior to Sergeant's retirement, Police Officer 1 was assigned to the Conditions Unit, and Sergeant was his supervisor. The Conditions Unit is generally responsible for focusing on the criminal activity that is the most significant issue within the precinct. The Conditions Unit partners with other NYPD groups within the precinct, such as the Anticrime Unit or the Warrant Squad. Based on my training and experience, conversations with other law enforcement officers and involvement in the investigation, I know that officers assigned to the Conditions Unit, as part of their duties and responsibilities, patrol the neighborhood, interact with individuals within the precinct and execute arrests based on probable cause. After leaving the Conditions Unit, Police Officer 1 became a member of the Strategic Enforcement Team ("SET") within the 67 Precinct. Police Officer 2 and the three other police officers involved in Kingsley's arrest were also members of the SET team when Police Officer 1 joined.

13.     The July 2017 device utilized was a switch-activated device. The device consisted of, among other things, a 9-volt Energizer battery, a battery case holder, an initiator and a clothespin with screws in it. The device was contained in a mailing tube that was approximately five inches in diameter and twelve inches long. According to a NYPD laboratory report, the device contained a mix of potassium chlorate and aluminum metal. Based on my training and experience and conversations with bomb technician experts, I have

learned that potassium chlorate and aluminum metal, when mixed together, create an incendiary flash powder that can be used for destructive devices.

14.     According to records obtained from Amazon, prior to the explosion, on or about February 2, 2017, Victor Kingsley placed an order for "5lb Eckart German Blackhead 5413 H Super Aluminum Powder 3 Micron." Kingsley provided "bkings7809@aol.com" (the "SUBJECT EMAIL ACCOUNT") as the email account for the order. The substance ordered is consistent with the aluminum metal powder that was found in the July 2017 device. On or about April 22, 2017, Victor Kingsley placed an order on Amazon for a "BILUSOCN Profession 12cue 433MHZ Wireless remote control Fireworks firing system." Kingsley provided the SUBJECT EMAIL ACCOUNT as the email account for the order. A review of this product on Amazon shows that it contains initiators that are consistent with the kind used in the July 2017 device. On or about May 3, 2017, Victor Kingsley placed an order on Amazon for a "Tape Logic TLP5026KHD Jumbo Mailing Tubes, 5"x26", Kraft (Pack of 15)." Kingsley provided the SUBJECT EMAIL ACCOUNT as the email account for the order. The mailing tubes are the same color and diameter of the mailing tube used for the July 2017 device. Although the tube ordered is longer than the one used in the July 2017 device, the tube ordered is capable of being cut to a length of 12 inches. On or about July 3, 2017, Victor Kingsley placed an order on Amazon for an "Actopus 6PCS 9V Battery Box Pack Holder With ON/OFF Power Switch Toggle." Kingsley provided the SUBJECT EMAIL ACCOUNT as the email account for the order. The battery pack holder is consistent with the battery pack holder used in the July 2017 device.

7

15.    Amazon records further show that, on or about September 12, 2017, after the July explosion, Victor Kingsley placed another order on Amazon for "5lb Eckart German Blackhead 5413 H Super Aluminum Powder 3 Micron." Kingsley provided the SUBJECT EMAIL ACCOUNT as the email account for the order. On or about February 7, 2018, Victor Kingsley placed an order on Amazon for "4 Pcs 9V Battery Case Holder with Cover Storage Case Holder with ON/OFF Switch for 6F22." Kingsley provided the SUBJECT EMAIL ACCOUNT as the email account for the order.

16.    In addition, records obtained from Alpha Chemicals show that on or about April 29, 2011, Victor Kingsley placed an order for ten pounds of aluminum powder and thirty pounds of red iron oxide. Based on my training and experience, I know that red iron oxide and aluminum powder can be combined to create thermite, an incendiary material. Kingsley provided the SUBJECT EMAIL ACCOUNT as the email account for the order. Records obtained from Thunder Valley show that on or about February 7, 2017, Victor Kingsley placed an order for fifteen pounds of potassium perchlorate. Kingsley provided the SUBJECT EMAIL ACCOUNT as the email account for the order. On or about September 20, 2017, Victor Kingsley placed another order from Thunder Valley. Kingsley ordered ten pounds of potassium perchlorate. Kingsley provided the SUBJECT EMAIL ACCOUNT as the email account for the order. As discussed above, the explosive material contained in the July 2017 device was a mix of potassium perchlorate and aluminum metal.

17.    On or about February 27, 2018, the Honorable Vera M. Scanlon, United States Magistrate Judge, issued a warrant for the arrest of Victor Kingsley for using a weapon of mass destruction resulting in death, in violation of 18 U.S.C. § 2332a, and the

8

unlawful transportation of explosive devices, in violation of 18 U.S.C. § 842(a)(3).  On

February 28, 2018, agents arrested Victor Kingsley at his residence in Brooklyn.  Agents

then conducted a search of the residence pursuant to a search warrant.  During the search,

agents found, among other things, a torn up mailing label, which had the same recipient and

sender as the package containing the July 2017 device.  Agents also found a number of fully

assembled and partially assembled devices, including one device that appeared upon initial

inspection to be almost identical to the July 2017 device.  The listed recipient was Police

Officer 2's wife, using her maiden name, and the sender was "Kohl's Department Stores."

An open source search shows that Kohl's is listed as the registry for Police Officer 2 and his

now-wife's wedding.  Agents found approximately forty pounds of powder that, based on its

physical appearance and initial field testing, is believed to be a low-explosive pyrotechnic,

which is commonly referred to as flash powder.  Agents also found approximately twenty

pounds of what is believed, based on its physical appearance and initial field testing, to be

thermite, which is a mixture of iron oxide and aluminum and is an incendiary material.

        18.    Based on my training and experience, I know that when an online order

is placed, emails confirming the order and later providing shipping information are often sent

to the email account provided.  Accordingly, based on the evidence set forth, there is

probable cause to believe that the SUBJECT EMAIL ACCOUNT, which Kingsley provided

for multiple orders for chemicals and bomb components, will contain information that

constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. §

842(a)(3)(A) (transportation of explosive materials) and 18 U.S.C. § 2332a(a)(2) (use of a

weapon of mass destruction).

19.     Records obtained from AOL show that the SUBJECT EMAIL ACCOUNT is subscribed to Besorene Kingsley at the 43rd Street address. The account was created on or about August 30, 1995. On or about November 28, 2017, a preservation request for the SUBJECT EMAIL ACCOUNT was sent to AOL. On or about March 9, 2018, a renewal preservation request for the SUBJECT EMAIL ACCOUNT was sent to AOL. In general, an email that is sent to an AOL subscriber is stored in the subscriber's "mail box" on AOL's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on AOL's servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on AOL's servers for a certain period of time.

## BACKGROUND CONCERNING EMAIL

20.     In my training and experience, I have learned AOL provides a variety of on-line services, including electronic mail access, to the public. AOL allows subscribers to obtain email accounts at the domain name (e.g., aol.com), like the email account listed in Attachment A. Subscribers obtain an account by registering with AOL. During the registration process, AOL asks subscribers to provide basic personal information. Therefore, the computers of AOL are likely to contain stored electronic communications (including retrieved and unretrieved email for AOL subscribers) and information concerning subscribers and their use of AOL services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

10

21.     An AOL subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by AOL.  In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

22.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provides clues to their identity, location or illicit activities.

23.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and

other log files that reflect usage of the account.  In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

24.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

25.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a

12

relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

26.    Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on AOL who will then compile the

13

requested records at a time convenient to it, reasonable cause exists to permit the execution

of the requested warrant at any time in the day or night.

Respectfully submitted,

LAWRENCE SCHMUTZ
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _____June 5_____, 2018

_____
HONOR
UNITED                          DGE
EASTEF                          K

14

## ATTACHMENT A

**Property To Be Searched**

This warrant applies to information associated with **bkings7809@aol.com** that is stored at premises controlled by AOL, a company that is headquartered in New York, New York.

**ATTACHMENT B**

**Particular Things To Be Seized**

I.      **Information to be disclosed by AOL (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on November 28, 2017 and renewed on March 9, 2018, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.      All records pertaining to communications between the Provider and any

person regarding the account, including contacts with support services and records of actions

taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. § 842(a)(3)(A) (transportation of explosive materials) and 18 U.S.C. § 2332a(a)(2) (use of a weapon of mass destruction), those violations involving Victor Kingsley occurring after April 1, 2011, including, for the account listed on Attachment A, information pertaining to the following matters:

(a) Evidence related to any orders, purchases, inquiries or research related to chemicals, explosive materials or other components utilized to create an explosive device, explosive materials or any other weapon;

(b) Evidence related to Police Officers 1 and 2, Sergeant, the officers involved in Kingsley's 2014 arrest, their family members, any other individuals involved in Kingsley's criminal case or any other police officers, the 67 Precinct or any other police officers, including but not limited to any attempts to gain personal information related to any of these individuals;

(c) Evidence related to explosive materials, devices or any other weapons, including any manuals, instructions or videos concerning how to create explosive materials;

(d) Evidence related to whitepages.com or any other evidence related to obtaining address or other personal information, including information for Police Officers 1 and 2, Sergeant, the officers involved in Kingsley's 2014 arrest, their family members, any other individuals involved in Kingsley's criminal case or any other police officers;

3

(e) Communications between any individuals related to explosive devices, explosive materials or obtaining or creating weapons;

(f) Evidence related to any preparatory steps taken in furtherance of the scheme to use a destructive device or other type of weapon of mass destruction;

(g) Evidence related to the selection of targets or obtaining information related to those targets in furtherance of the scheme;

(h) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(i) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(j) The identity of the person(s) who created or used the email account, including records that help reveal the whereabouts of such person(s).

(k) The identity of the person(s) who communicated with the email account about matters relating to explosive devices, explosive materials and police officers, including records that help reveal their whereabouts.

4

### CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by AOL, and my official title is _____. I am a custodian of records for AOL. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of AOL, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.    such records were kept in the ordinary course of a regularly conducted business activity of AOL; and

    c.    such records were made by AOL as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____

Date                          Signature